SEIDEN | LAW

**July 7, 2025**

**VIA ECF**

The Honorable Sanket J. Bulsara
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: *Odysseus Ventures LLC et al. v. Scott Madison et al.*, 25-cv-02074 -SJB-SIL**

Dear Judge Bulsara:

We represent Plaintiffs in the above-referenced action and write in response to Defendant Roy Lustig's June 30, 2025 pre-motion letter ("Letter") seeking a pre-motion conference regarding his anticipated motion to dismiss the claims against him. (ECF 22). Lustig—the attorney who facilitated the misappropriation of Plaintiffs' $1.5 million investment—argues that the Complaint fails to state claims for breach of fiduciary duty, aiding and abetting fraud, unjust enrichment, and civil conspiracy, and additionally contends this Court lacks personal jurisdiction over him. For the reasons below, his arguments fail.

## I. Factual Summary

As detailed in the Complaint, Plaintiffs were fraudulently induced to invest $1.5 million in what was represented as a secured Medium-Term Note ("MTN") issued by MTN Funding PLC ("MTN Funding"). (Compl. ¶¶ 120–138, 231–238, 251, 256–258). Defendants Scott Madison, acting through his entities Megtor Capital Partners LLC and Megtor Advisors LLC (together, "Megtor"), and David Nepo falsely claimed the MTN was fully guaranteed, would yield fixed coupon payments, and would unlock access to up to $200 million in institutional capital. (*Id.* ¶¶ 34–39, 137–139). In reliance on those misrepresentations, Plaintiffs transferred $1.5 million into Megtor's investment account, with the understanding Megtor would use those funds to purchase the MTN and transfer it into Plaintiffs' account. (*Id.* ¶¶ 78-112). In reality, the MTN was never delivered to Plaintiffs. Instead, in a scheme devised by defendant co-conspirators Madison, Nepo, and Lustig (Nepo's personal attorney), as well as Madison's Megtor companies, and Nepo's company Energy Funding Solutions LLC ("EFS"), Plaintiffs' funds were misappropriated to the benefit of Defendants.

Specifically, the day after Megtor transferred Plaintiffs' $1.5 million to MTN Funding to purportedly execute the MTN purchase, Lustig accepted, from MTN Funding, $2.4 million into his IOTA account, on behalf of Nepos's EFS, pursuant to a concealed promissory note between MTN Funding and EFS. (*Id.* ¶¶ 123–126). Those funds included the $1.5 million traceable to Plaintiffs, which had just been transferred from Megtor's account to MTN Funding. Lustig made no effort to confirm Plaintiffs' consent or provide disclosure, even though he knew the funds were intended for a securities investment. (*Id.* ¶¶ 127, 131, 223–225). Lustig then disbursed Plaintiffs' $1.5 million to repay a prior loan in that same amount made by his own company, First City

Funding LLC, to Nepo—a transaction unrelated to any legitimate MTN acquisition. (*Id.* ¶¶ 226, 234, 251). As escrow agent, Lustig knowingly facilitated the diversion, concealed the misuse, and enabled the completion of the fraudulent conspiracy. (*Id.* ¶¶ 129, 135, 236, 257). Lustig's involvement was essential to the scheme's execution and cover-up.

## II. Lustig Breached Fiduciary Duties

Lustig contends he owed Plaintiffs no fiduciary duty because there was no "relationship" between them. (Ltr. 2). That is legally incorrect. Courts have consistently held that an attorney holding funds in escrow or trust assumes fiduciary duties to known or intended third-party beneficiaries, even absent a direct client relationship. *See, e.g.*, *Brassell v. Harbourview Abstract, Inc.*, 2016 N.Y. Slip Op. 31817(U), at *6–7 (Sup. Ct. Suffolk Cty. 2016) ("An escrow agent, especially [an] attorney[], becomes a trustee for anyone with a beneficial interest in the trust [funds]"); *Delgado v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 186408, at 11–12 (E.D.N.Y. Nov. 8, 2017) (escrow agent owes fiduciary duty to those whose funds are in escrow); *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 771 (S.D.N.Y. 2011) (escrow agent "has fiduciary duties to the depositor of the escrow funds"); *Groisman v. Feler*, 2017 US Dist. LEXIS 237352 (attorney breached fiduciary duties owed to the beneficial owner of funds, even though investor was not attorney's client).

Here, Lustig accepted Plaintiffs' $1.5 million investment funds into his trust account, knowing they were intended for a securities investment. Lustig then used those funds to repay his own company's prior loan to co-defendant/co-conspirator Nepo, which actions amount to misconduct. *See Marini v. Adamo*, 995 F. Supp. 2d 155, 162 (E.D.N.Y. 2014) (fiduciary breached duty by self-dealing and not disclosing personal financial interest). Lustig's protest that he was simply disbursing "Nepo's" funds (Ltr. at 2) ignores the pled fact that they were not Nepo's funds—they were Plaintiffs' investment funds.

## III. Lustig Aided and Abetted Defendants' Fraudulent Scheme

Lustig claims the Complaint lacks allegations of his "actual knowledge" or "substantial assistance." (Ltr. at 3). Not so. Plaintiffs allege in detail a complex fraudulent conspiracy (Compl. ¶¶ 47–146, 231), and Lustig's role was central to it. He knowingly received investor funds, from an undisclosed and fraudulent $2.4 million transfer, into his trust account, held them as escrow, and directed $1.5 million of those investor funds (the same amount of Plaintiffs' investment) to repay a loan owed to his own company by his co-conspirator Nepo.

Lustig's actual knowledge of the fraudulent scheme may be inferred from circumstantial facts. *See Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 464 (S.D.N.Y. 2009). Here, Lustig's conduct—handling investor funds through his trust account, disbursing them to satisfy a personal debt, and failing to confirm the investors' identity, consent, or purpose of the funds—was so reckless and self-interested as to support an inference of scienter. Courts have held similar conduct sufficient to plead knowledge. *See SEC v. Milan Grp., Inc.*, 962 F. Supp. 2d 182, 201 (D.D.C. 2013) (lawyer aided prime banking fraud by acting "with extreme recklessness," disbursing investor funds from trust account, and "fail[ing] to exercise even a modicum of lawyerly interest" in the transactions).

Just as the attorney in *Milan*, Lustig functioned as an escrow agent for a fraudulent security, failed to validate the source or purpose of investor funds, paid himself through escrow

disbursements, and did not question irregularities or confirm authorization. That suffices. *See also SEC v. DeFrancesco*, 699 F. Supp. 3d 228, 245 (S.D.N.Y. 2023).

## IV. Lustig Was Unjustly Enriched

Lustig argues he wasn't "enriched," but the Complaint alleges that Plaintiffs' funds were used to repay a $1.5 million loan from his company to Nepo. (Compl. ¶¶ 132, 226, 25.) That is a direct benefit to Lustig. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (elements of unjust enrichment are enrichment, at the plaintiff's expense, and inequity). Lustig's company got repaid; Plaintiffs lost their money; that suffices and the equities favor disgorgement. *See Trade Expo Inc. v. Sterling Factors, Inc.*, 2014 N.Y. Slip Op. 32408(U), at *8–9 (Sup. Ct. N.Y. Cty. 2014) (recipient of misappropriated funds liable for unjust enrichment even if not initial wrongdoer).

## V. Lustig Was Party to a Civil Conspiracy

Conspiracy is not an independent tort in New York, but it can establish joint liability. *Alexander & Alexander of N.Y. v. Fritzen*, 68 N.Y.2d 968, 969 (1986). The Complaint alleges that Lustig knowingly joined the conspiracy and acted in furtherance by handling the diverted funds. (Compl. ¶¶ 232–36, 250–51). That suffices at the pleading stage. *See Superb Motors Inc. v. Deo*, 2025 U.S. Dist. LEXIS 52756, at *33-34 (E.D.N.Y. 2025) (agreement can be inferred from coordinated conduct).

## VI. The Court Has Personal Jurisdiction Over Lustig

At the pleading stage, Plaintiffs need only make a prima facie showing of personal jurisdiction under FRCP 12(b)(2) and CPLR 3211(a)(8), by alleging facts that, if true, establish a basis for jurisdiction over the defendant. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). The Complaint readily meets that standard.

CPLR § 302(a)(1) permits jurisdiction over a non-domiciliary who participates in a conspiracy where any co-conspirator commits an overt act in New York in furtherance of the scheme. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467–68 (1988). That standard is met where the out-of-state defendant acts through co-conspirators in New York for his benefit and with his knowledge or consent. *See Cleft of the Rock Found. v. Wilson*, 992 F. Supp. 574, 581–82 (E.D.N.Y. 1998).

That is precisely what Plaintiffs allege. Madison and Megtor, operating from New York, carried out acts in this District to induce Plaintiffs to invest by making misrepresentations in Zoom meetings, creating falsified confirmations, and executing fake guarantees. (Compl. ¶¶ 8, 34–35, 37–39, 231). Those overt acts were essential to the scheme. Lustig, acting from Florida, then handled the diverted funds in his IOTA trust account and disbursed $1.5 million to repay a loan from his company to his co-conspirator Nepo. (*Id.* ¶¶ 222–228, 231–236, 256). That role—handling, concealing, and personally benefitting from the fraud proceeds—is the sort of conduct found sufficient to establish personal jurisdiction in *Cleft of the Rock*.

There, the court upheld jurisdiction over a non-domiciliary attorney who, like Lustig, was alleged to have "facilitated the conspiracy by laundering the proceeds of the scheme through his attorney trust account," and who "benefitted from the alleged wrongdoing by allegedly using some

proceeds of the scheme to pay off" a personal loan. *Id.* at 584. The court rejected the argument that the attorney's role came after the New York-based overt acts, finding that even if he joined after the initial inducement, his knowing ratification and participation in the scheme subjected him to jurisdiction. *See id.* (citing *Dixon v. Mack*, 507 F. Supp. 345, 350–51 (S.D.N.Y. 1980)). So too here: even if Lustig was not involved in the misrepresentations, his conscious adoption of the conspiracy's objectives and facilitation of its payoff makes him jurisdictionally accountable for the entire scheme.

As the *Cleft* court further emphasized, conspiracy allegations are rarely supported by direct evidence and are evaluated based on the "totality of conduct of all the participants and the reasonable inference to be drawn therefrom." *Id.* at 583 (quoting *Grosser v. Commodity Exch., Inc.*, 639 F. Supp. 1293, 1310 (S.D.N.Y. 1986)). Here, the Complaint plausibly alleges a continuing fraud involving overt acts in New York and a knowing, indispensable role played by Lustig.[1]

* * *

The Complaint plausibly alleges that Lustig knowingly participated in a fraudulent scheme, abused his fiduciary role, and personally benefitted from the misappropriation of Plaintiffs' funds. His motion to dismiss should be denied. We are prepared to brief or address these issues at a conference.

Respectfully Submitted,

/s/ *Lauren Elliot*

*Counsel for Plaintiffs*

cc: Counsel of Record (via ECF)

---

[1] Also, where a plaintiff submits evidentiary facts connecting an out-of-state defendant to New York transactions, courts should not resolve jurisdictional challenges or dismiss the complaint without allowing discovery. *See Cleft*, 992 F. Supp. at 583 (citing *Sierra Rutile Ltd. v. Katz*, 1992 WL 236208, at 8 (S.D.N.Y. Sept. 8, 1992) and *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1343–44 (2d Cir. 1972)).

SEIDEN | LAW

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(c) AND**
**RULE VI(G) (1) of JUDGE BULSARA'S INDIVIDUAL PRACTICE RULES**

Lauren Elliot, attorney for Plaintiffs, pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, and Rule VI(G)(1) of Judge Sanket J. Bulsara's Individual Practice Rules, certifies as follows:

1. The response letter filed herewith to Defendant Roy Lustig's pre-motion letter contains 1,750 words; and

2. The response letter complies with the applicable word limit of 1,750 words as prescribed by Judge Bulsara's Individual Practice Rule VI(G)(1) and Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York.

/s/ *Lauren Elliot*